NOT DESIGNATED FOR PUBLICATION

No. 122,396

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN R. JESSE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; GRANT D. BANNISTER, judge. Opinion filed May 7, 2021. Convictions affirmed, sentence vacated, and case remanded with directions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: In this direct appeal, Justin Jesse presents three arguments. He first argues there is insufficient evidence in the record to support his conviction for felony interference with a law enforcement officer. Next, he contends his sentence is illegal, a point the State concedes. And he concludes by arguing that the Kansas Sentencing Guidelines Act violates his state and federal constitutional rights to a jury trial. The record and the law persuade us that his first argument is invalid. Because of the State's concession and our review of Jesse's sentence, we must vacate his sentence and remand

1

the case to the district court for a new sentence. And, finally, horizontal precedent persuades us to reject his attack on the Sentencing Guidelines Act.

We affirm Jesse's convictions, vacate his sentence, and remand for further proceedings.

*After investigating, a deputy tries to arrest Jesse for trying to strangle his father.*

On April 12, 2019, when someone from a residence in Idana, Kansas, called 911 and hung up the phone, the dispatcher sent a Clay County Deputy Sheriff to investigate. When the deputy arrived, he discovered a crowd outside the house. He learned that Jesse had fought with his father, Bobby. Bobby had dialed 911 but hung up the phone. The deputy separated the two men, and each told him their own version of the fight.

After hearing both sides and examining the two men, the deputy decided to arrest Jesse. His decision stemmed from the relative size and strength of father and son, the strangulation marks on Bobby's neck, and the cut on Bobby's nose. Jesse did not want to be arrested. He resisted.

According to the testimony, Jesse struck the deputy on the head and started punching him with both hands. The deputy took Jesse to the ground, and, while they struggled there, Jesse grabbed the deputy's gun and kept trying to pull it from the holster. Jesse told the deputy that he would grab the gun and kill him. Eventually, with help from some in the crowd, the deputy gained control and arrested Jesse for aggravated domestic battery for the strangulation of his father, criminal threat, and interference with a law enforcement officer.

The State charged Jesse with aggravated domestic battery, felony interference with law enforcement, felony criminal threat, and misdemeanor battery on a law enforcement

2

officer. The jury found Jesse guilty on all counts except aggravated domestic battery; for that charge, the jury found Jesse guilty of the lesser included offense of domestic battery—a misdemeanor. The district court later set aside Jesse's criminal threat conviction based on the holding in *State v. Boettger*, 310 Kan. 800, 807, 450 P.3d 805 (2019).

The court sentenced Jesse to a suspended 10-month prison sentence with 18 months' probation. We will explain the sentencing error later.

*Jesse never disputed the felony interference charge at trial.*

Jesse now contends his jury could not have legally found him guilty of felony interference with a law enforcement officer for two reasons. First, no witness testified that the deputy with whom he fought was engaged in investigating a felony crime. And, second, the court did not define the term "felony" in the jury instructions. Thus, since the jury only found him guilty of misdemeanor domestic battery, he can only be guilty of misdemeanor interference with a law enforcement officer.

Jesse's first issue is a claim of insufficient evidence. In our analysis of this issue, we look at the charges, the jury instructions, and then the evidence. In the end, we are convinced that sufficient evidence supports the jury's verdict. Our inquiry is guided by a fundamental legal point.

Sufficient evidence supports a conviction on appeal when, with the evidence viewed in a light most favorable to the State, an appellate court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

3

The State charged Jesse with felony interference with law enforcement, see K.S.A. 2020 Supp. 21-5904(a)(3) and (b)(5)((A) for resisting a felony arrest. That statute makes it unlawful to knowingly obstruct an officer discharging an official duty. K.S.A. 2020 Supp. 21-5904(a)(3). But the charge can be a misdemeanor if the officer is not engaged in dealing with a felony and instead is concerned with a misdemeanor crime.

Both Jesse and the State agree that the offense is a felony when a person obstructs an officer carrying out an official duty related to a felony, such as arresting a person on a felony charge. See K.S.A. 2020 Supp. 21-5904(b)(5)(A). We rely on *State v. Hudson*, 261 Kan. 535, 538-39, 931 P.2d 679 (1997), when the court held that "[t]he touchstone for the classification of the offense is the reason for the officer's approaching the defendant who then flees or otherwise resists." We turn now to the jury instructions.

The district court instructed the jury that it had to find the following facts to find Jesse guilty:

"1. Deputy Paul Bishop was discharging an official duty, namely attempting to arrest Justin Jesse for a felony crime.
"2. The defendant knowingly resisted Deputy Paul Bishop in discharging that official duty.
"3. The act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty.
"4. At the time the defendant knew or should have known that Deputy Paul Bishop was a law enforcement officer.
"5. This act occurred on or about the 12th day of April, 2019, in Clay County, Kansas."

The jury found that the State proved each of those elements.

Jesse challenges only the first element. He says that the State presented no evidence that a juror could rely on to find that aggravated domestic battery—the crime Bishop was trying to arrest him for—was a felony offense. Jesse concedes, as he must,

4

that aggravated domestic battery *is* a felony offense. See K.S.A. 2020 Supp. 21-5414(c)(2). But he contends while that may be obvious to legal professionals, it is the jury that is tasked with finding that the State has proved the element, and based on the evidence at trial, a rational juror could not so find. Our review of the record reveals that Jesse did not contest this point at trial. The deputy was making a felony arrest and Jesse fought with the deputy, resisting the arrest.

The State concedes that Deputy Bishop did not testify that he was trying to arrest Jesse for a felony and the jury was not provided with the definition of a felony. But the State argues that the jury could reasonably infer that Deputy Bishop was trying to arrest Jesse for a felony based on several factors.

- The misdemeanor or felony nature of the crime was uncontested at trial;
- Deputy Bishop testified that he had tried to arrest Jesse for aggravated domestic battery;
- Bobby's description of Jesse's attack on him on Deputy Bishop's body camera footage;
- Photos of Bobby's injuries;
- Bobby's frailty when he took the stand; and
- Jesse's nephew's testimony about Jesse trying to fight through the nephew to get to Bobby.

The key point here that was uncontested at trial is the nature of the offense for which Deputy Bishop arrested Jesse: aggravated domestic battery. Under *Hudson*, the facts for determining felony versus misdemeanor interference is *the officer's reason* for approaching the defendant who then flees or resists—not the offense the defendant is ultimately convicted of. 261 Kan. at 538-39. And here, Jesse did not contest at trial that Deputy Bishop approached him to arrest him for a felony offense.

5

Based on the cut on Bobby's nose and the strangulation marks on his throat, the jury could reasonably infer that Deputy Bishop was trying to arrest Jesse for a felony offense. It is a jury's prerogative to determine the weight to be given to the evidence and draw reasonable inferences from it. *State v. Gibson*, 246 Kan. 298, Syl. ¶ 3, 787 P.2d 1176 (1990).

Here, the State alleged that Jesse had resisted Deputy Bishop when he had tried to arrest Jesse for a felony, Deputy Bishop testified that he had tried to arrest Jesse for aggravated domestic battery, and there was no suggestion at trial that Deputy Bishop had tried to arrest Jesse for a misdemeanor charge. Given those facts, the jury could reasonably infer that Deputy Bishop had tried to arrest Jesse for a felony.

Given our standard of review, we see no reason to reverse this conviction based on insufficient evidence. We will now review the sentencing error.

*The court used an inapplicable statute.*

The State charged Jesse with knowingly obstructing an officer in the discharge of an official duty by resisting a felony arrest. According to K.S.A. 2020 Supp. 21-5904(b)(5)(A), that offense is a severity level 9 nonperson felony. Based on Jesse's criminal history, his presumptive underlying prison sentence was seven to nine months. See K.S.A. 2020 Supp. 21-6804(a).

But the court sentenced Jesse under K.S.A. 2020 Supp. 21-5904(a)(2), which is a severity level 8 person felony under K.S.A. 2020 Supp. 21-5904(b)(4)(B). The court imposed the guidelines sentence of 10 months in prison.

The State concedes that Jesse's sentence is illegal because it fails to conform to the applicable statutory provisions. See K.S.A. 2020 Supp. 22-3504(c)(1). We therefore

6

vacate Jesse's sentence for interference with law enforcement and remand the matter for resentencing. We will now review Jesse's attack on the Sentencing Guidelines Act.

*We hold the Sentencing Guidelines Act does not violate the Kansas Constitution.*

Jesse's final argument on appeal is that the Act violates his state and federal constitutional rights to a jury trial because it permits judicial fact-finding of prior convictions. Those findings, Jesse contends, enhance a defendant's sentence without first requiring the State to prove those convictions to a jury beyond a reasonable doubt. According to Jesse, that violates the Sixth Amendment to the United States Constitution under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and § 5 of the Kansas Constitution Bill of Rights.

Jesse concedes that the Kansas Supreme Court has rejected his argument about *Apprendi* and criminal history scores in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). Since then, that court has reaffirmed *Ivory* several times. See *State v. Williams*, 299 Kan. 911, 941, 329 P.3d 400 (2014); *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013). Because there is no indication that our Supreme Court is departing from its earlier position in *Ivory*, this court must follow that precedent. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

When we examine his Kansas Constitutional argument, we see that Jesse's claim under the Kansas Constitution is that § 5 preserves the jury trial right as it historically existed at common law when the state's constitution started. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133-34, 442 P.3d 509 (2019). Relying on cases cited by Justice Thomas in his *Apprendi* concurrence, Jesse asserts that there was an American common-law right to a jury trial on penalty-enhancing prior convictions that predates Kansas statehood. And because the Act relies on judicial prior-conviction findings to determine presumptive

7

sentences, Jesse concludes, the Act violates the common-law right to a jury trial enshrined in § 5.

Horizontal precedent persuades us to reject this argument. Numerous  panels of our court have considered this argument before and rejected it. See, e.g., *State v. Teters*, No. 121,632, 2020 WL 5265570 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* October 2, 2020;  *State v. Hollon*, No. 121,476, 2020 WL 3885912 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* August 5, 2020; *State v. Lovett*, No. 121,287, 2020 WL 3579874 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* August 3, 2020; *State v. Davis*, No. 121,662, 2020 WL 3579911 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* July 28, 2020; *State v. Billoups*, No. 120,040, 2020 WL 1969356 (Kan. App. 2020) (unpublished opinion), *rev. denied* 312 Kan. ___ (September 23, 2020); *State v. Brown*, No. 120,590, 2020 WL 1897361 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* May 18, 2020. Each panel has rejected Jesse's position and so do we.

We affirm Jesse's convictions, vacate his sentence, and remand for resentencing.